**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF OHIO**

**EASTERN DIVISION**

| | | |
|---|---|---|
| BRANDON QUINN, | ) | CASE NO. 1:20-CV-01863-JRK |
| Petitioner, | ) | |
| | ) | JUDGE JAMES R. KNEPP, II |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| WARDEN ED SHELDON, IN HIS | ) | |
| OFFICIAL CAPACITY; | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent, | ) | |

I.      **INTRODUCTION**

Petitioner Brandon Quinn ("Mr. Quinn") seeks a Writ of Habeas Corpus under 28 U.S.C. § 2254 and asserts four grounds for relief. (ECF Doc. 1). A Medina County jury convicted Mr. Quinn of eleven counts of gross sexual imposition: (1) two counts of third-degree felony gross sexual imposition under R.C. § 2907.05(A)(4); and (2) nine counts of fourth-degree felony gross sexual imposition under R.C. § 2907.05(A)(5). The trial court sentenced Mr. Quinn to four years on each third-degree felony gross sexual imposition count, 18 months on each fourth-degree felony gross sexual imposition count, and then ordered these sentences to run concurrently with each other for a total four-year term of imprisonment.

According to the Ohio Department of Rehabilitation and Corrections website, Mr. Quinn previously served his four-year sentence at Richland Correctional Institution but is now currently under Adult Parole Authority supervision.[1] This matter is before me by an automatic order of

---

[1] *See* https://ohio.gov/residents/resources/offender-search (last visited May 19, 2023). Mr. Quinn's transfer from prison to post-release control does not defeat this Court's jurisdiction to hear his petition because: (1) parole satisfies

reference under Local Rule 72.2 for preparation of a report and recommendation of Mr. Quinn's petition and other case-dispositive motions.

For the reasons set forth below, I RECOMMEND the Court DISMISS and/or DENY Mr. Quinn's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 and not grant him a certificate of Appealability.

## II.     RELEVANT FACTUAL BACKGROUND

In a habeas proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also Spagnola v. Horton*, No. 17-1462, 2017 WL 8948745, at *2 (6th Cir. 2017). The Ohio Court of Appeals for the Ninth District set forth the following facts on direct appeal:

> {¶2}  According to the victim ("S.L."), she was getting dressed for school one morning in 2012 when she noticed her mother's boyfriend's cell phone propped up against her bed, facing the area of her bedroom by a mirror where she normally gets dressed. She picked the phone up and realized it was actively recording a video. She took the phone to her mother, who was still in bed at the time, and told her to look at it. Mr. Quinn immediately grabbed the phone and began calling S.L. a liar. S.L. rushed off to school, where she told a friend and two others about the incident. School officials called the police, and Mr. Quinn was charged with voyeurism. S.L.'s mother did not believe her daughter's story, and S.L. was soon forced to move out of their home and live at her aunt's house for the remainder of the school year. S.L. eventually moved to Michigan to live with her father and his girlfriend.
>
> {¶3}  At some point in 2012 or 2013, she revealed to her boyfriend ("C.R."), her father, and her father's girlfriend that Mr. Quinn had been molesting her for years, but no further action was taken. When her father was driving her back to Ohio for Mr. Quinn's voyeurism trial, S.L. spoke to her mother on the phone. S.L. had a panic attack, was afraid, and did not want to betray her mother, so she decided not to attend the trial, and her father drove her back home. After S.L. failed to appear at Mr. Quinn's trial, the voyeurism charge was dismissed.
>
> {¶4}  S.L. eventually moved back to Ohio in 2015, and she decided to finally tell the prosecutor and police that Mr. Quinn had been molesting her for years. She

---

the "in custody" requirement of 28 U.S.C. § 2254, *DePompei v. Ohio Adult Parole Auth.*, 999 F.2d 138, 140 (6th Cir. 1993); and (2) the "in custody" requirement need only be met at the time the application is filed, *Northrop v. Trippett*, 265 F.3d 372, 375 n.1 (6th Cir. 2001).

claimed Mr. Quinn would wake her up for school almost every day by rubbing her back and touching her breasts, buttocks, and vagina. During one particular incident, she was lying on her stomach in bed when Mr. Quinn crawled into bed with her, rubbed his penis on her buttocks, and ejaculated onto her back.

{¶5} Mr. Quinn was charged with two counts of felony-three GSI, which allegedly occurred in 2007 when S.L. was less than 13 years old. He was also charged with nine counts of felony-four GSI, which allegedly occurred from 2008 to 2012 when S.L.'s ability to consent was substantially impaired because she was asleep. After a jury trial, Mr. Quinn was convicted of all eleven counts of GSI. The trial court sentenced him to an aggregate total of four years in prison and classified him as a Tier II sex offender.

*State v. Quinn*, 2019-Ohio-3980, ¶¶ 2-5.

## III.    RELEVANT STATE PROCEDURAL HISTORY

### A.  *State Conviction*

On April 4, 2017, a Medina County Grand Jury indicted Mr. Quinn, charging him with two counts of third-degree felony gross sexual imposition and nine counts of fourth-degree felony gross sexual imposition. (ECF Doc. 6-1, Ex. 1, PageID#109-14). Mr. Quinn, through counsel, pleaded not guilty to all charges. (*Id.*, Ex. 2, PageID#115).

On January 11, 2018, a jury found Mr. Quinn guilty of two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4) and nine counts of gross sexual violation of R.C. 2907.05(A)(5). (*Id.*, Ex. 3, PageID#116-17). On March 5, 2018, the trial court sentenced Mr. Quinn to four years for each third-degree felony count of gross sexual imposition and 18 months for each fourth-degree felony count of gross sexual imposition. (*Id.*, Ex. 4, PageID#118-19). The trial court ordered Mr. Quinn's sentences to be served concurrently, which resulted in a four-year total term of imprisonment. (*Id.*).

### B.  *Direct Appeal*

On March 27, 2018, Mr. Quinn, through counsel, filed a timely notice of appeal (ECF Doc. 6-1, Ex. 5, PageID#120), as well as a motion requesting the Ninth District Court of Appeals stay

the execution of his sentence and order a $25,000 bail bond throughout the course of the appellate proceedings. (ECF Doc. 6-1, Ex. 6, PageID#121). The State opposed Mr. Quinn's motion to stay. (*Id.*, Ex. 7, PageID#123-29). Mr. Quinn replied to the State's opposition. (*Id.*, Ex. 8, PageID#130-31). On June 6, 2018, the Ninth District denied Mr. Quinn's stay motion. (*Id.*, Ex. 9, PageID#132).

On May 29, 2018, Mr. Quinn, through counsel, filed his appeal brief, raising the following assignments of error:

1. The Trial Court erred in allowing a video to be played during trial. The video violated Ohio Rule of Evidence 403(A), as it bore no probative value to the proceedings, confused the jury, and was unfairly prejudicial to the Defendant.

2. The Trial Court erred in allowing the video to be played in that the video was admitted contrary to Ohio Rule of Evidence 404(B). It was evidence of another alleged crime of Defendant, which had no bearing or relation to the crimes of Defendant allegedly committed.

3. The Trial Court erred in allowing the Prosecutor to commit multiple acts of misconduct, thereby depriving Defendant of a fair trial.

4. The verdicts were against the manifest weight and the sufficiency of the evidence.

(*Id.*, Ex. 10, PageID#137). However, on June 6, 2018, the Ohio Court of Appeals issued an order noting that Mr. Quinn's brief failed to comply with Local Rule 7 because it did not have an appendix that included a copy of the judgment entry from which the appeal was filed. (*Id.*, Ex. 11, PageID#165). The order required Mr. Quinn to file a copy of the final judgment entry within 20 days, or the appellate brief may be stricken and the appeal dismissed.  (*Id.*) Mr. Quinn subsequently filed a show cause response that included the sentencing entry. (*Id.*, Ex. 12, PageID#168-69).

On June 15, 2018, State opposed the appeal. (*Id.*, Ex. 13, PageID#170-204). Mr. Quinn replied. (*Id.*, Ex. 14, PageID#205-17). On October 22, 2018, Mr. Quinn filed a second motion renewing his request that the Ninth District stay the execution of his sentence and order a $25,000

bail bond throughout the appellate proceedings. (*Id.*, Ex. 15, PageID#218-20). The Ohio Court of Appeals denied the renewed stay request on November 26, 2018. (*Id.*, Ex. 16, PageID#221).

On September 30, 2019, the Ohio Court of Appeals affirmed Mr. Quinn's convictions. (*Id.*, Ex. 17, PageID#222-39). On October 8, 2019, Mr. Quinn, through counsel, filed an application for en banc consideration. (*Id.*, Ex. 18, PageID#240-50). The State filed a response in opposition. (*Id.*, Ex. 19, PageID#251-56). The Ohio appellate court denied Mr. Quinn's motion. (*Id.*, Ex. 20, PageID#257-58).

On January 3, 2020, Mr. Quinn, through counsel, filed a timely notice of appeal in the Ohio Supreme Court. (*Id.*, Ex. 21, PageID#259-60). He filed a memorandum in support of jurisdiction, that raised the following propositions of law:

> 1. When reviewing a trial court's decision to admit "other-acts" evidence for abuse of discretion, an appeals court must consider the impact of the offending evidence on the verdict, the strength of the remaining evidence after the tainted evidence is removed from the record, and declare a belief that the error was not harmless beyond a reasonable doubt.
>
> 2. A trial court to improperly admits "other-acts" evidence and unfairly prejudicial evidence at trial where said evidence is not charged in the indictment; related to the charged offenses; is inflammatory; was not provided to defense counsel as part of discovery; and differs from and omits—without explanation—portions of the original video.

(*Id.*, Ex. 22, PageID#262). The State filed a memorandum in opposition. (*Id.*, Ex. 23, PageID#277-92). On March 17, 2020, the Ohio Supreme Court declined jurisdiction. (*Id.*, Ex. 24, PageID#293).

### C. *Request for* Nunc Pro Tunc *Sentencing Entry*

On September 12, 2018, Mr. Quinn, through counsel, filed a motion for a *nunc pro tunc* sentencing entry requesting the trial court to eliminate references in Mr. Quinn's sentencing entry that indicated an agreed sentence. (*Id.*, Ex. 25, PageID#294). On October 12, 2018, the trial court issued a *nunc pro tunc* sentencing entry. (*Id.*, Ex. 26, PageID#309-10).

### D.  *Writ of Mandamus*

On September 4, 2019, Mr. Quinn, through counsel, filed a complaint against the Ninth District Court of Appeals in the Supreme Court of Ohio requesting a writ of mandamus to compel the Ninth District to issue a ruling on Mr. Quinn's direct appeal. (*Id.*, Ex. 27, PageID#312-17). The Ninth District filed a motion to dismiss Mr. Quinn's complaint. (*Id.*, Ex. 28, PageID#318-23). On October 19, 2019, Mr. Quinn filed an application to dismiss his complaint as moot because the Ninth District issued its opinion in Mr. Quinn's direct appeal on September 30, 2019. (*Id.*, Ex. 29, PageID#325-27). On October 4, 2019, the Ohio Supreme Court granted Mr. Quinn's motion to dismiss the complaint. (*Id.*, Ex. 30, PageID#328).

### E.  *Petition to Vacate or Set Aside Judgment*

On April 15, 2019, Mr. Quinn, through counsel, filed a petition to vacate or set aside judgment of conviction or sentence. (*Id.*, Ex. 31, PageID#329-48). The State filed a brief in opposition. (*Id.*, Ex. 32, PageID#429-73). On March 4, 2020, the trial court denied Mr. Quinn's petition to vacate. (*Id.*, Ex. 33, PageID#374-83). Mr. Quinn appealed this ruling to the Ohio Court of Appeals. *State v. Quinn*, 2021-Ohio-1764. Mr. Quinn raised the following claims on appeal, none of which involve any of the grounds for release asserted in the habeas petition currently pending before this Court: (1) that the trial court erred in denying his R.C. § 2953.21 petition; and (2) that his trial counsel was ineffective for failing to investigate and challenge the truthfulness of the victim's testimony. *Id.* ¶ 4.

Mr. Quinn's ineffective assistance of trial counsel claim consisted of three sub-claims: (1) trial counsel failed to perform an investigation and conduct adequate discovery pertaining to the victim's allegations, particularly in regard to where the incidents occurred; (2) trial counsel failed to adequately cross-examine the victim and introduce evidence contradicting her testimony; and

(3) trial counsel failed to move for a new trial on the basis that Mr. Quinn's lease agreement details called the victim's credibility into question. *Id.* ¶11.

On May 24, 2021, the Ninth District Court of Appeals affirmed the trial court's judgment. *Id.* ¶22. Upon my independent review of the trial court's docket, Mr. Quinn did not appeal this decision to the Ohio Supreme Court.

## IV.    FEDERAL HABEAS PETITION

On August 21, 2020, Mr. Quinn, through counsel, filed the instant petition for writ of habeas corpus, asserting the following grounds for relief:

> **GROUND ONE:** [Mr. Quinn's] convictions were not supported by sufficient evidence, in violation of the Fifth and Fourteenth Amendments to the Federal Constitution, when the government failed to present evidence that the alleged victim was impaired.

> **GROUND TWO:** The trial court violated [Mr. Quinn's] right to due process under the Fourteenth Amendment, when the court allowed prior bad acts evidence to be presented against [Mr. Quinn], in violation of Evid. R. 404(B).

> **GROUND THREE:** The trial court violated [Mr. Quinn's] right to due process under the Fourteenth Amendment, when the court allowed prejudicial evidence to be presented against [Mr. Quinn], in violation of Evid. R. 403(A).

> **GROUND FOUR:** The prosecuting attorney violated [Mr. Quinn's] right to due process under the Fourteenth Amendment when the government failed to disclose video evidence, which was later played at [Mr. Quinn's] trial.

(ECF Doc. 1, PageID#7).

## V.    LEGAL STANDARDS

### A. *Jurisdiction*

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein

such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Court of Common Pleas of Medina County sentenced Mr. Quinn, and the Court takes judicial notice that Medina County is within this Court's geographic jurisdiction. (ECF Doc. 6-1, PageID#118-19). Mr. Quinn served his four-year sentence and is now on post-release control.

Mr. Quinn's transfer from prison to post-release control does not defeat this Court's jurisdiction to hear his petition because: (1) parole satisfies the "in custody" requirement of 28 U.S.C. § 2254, *DePompei v. Ohio Adult Parole Auth.*, 999 F.2d 138, 140 (6th Cir. 1993); and (2) the "in custody" requirement need only be met at the time the application is filed, *Northrop v. Trippett*, 265 F.3d 372, 375 n.1 (6th Cir. 2001). Accordingly, this Court has jurisdiction over Mr. Quinn's § 2254 petition.

### B.  *AEDPA Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009). AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases," and "'to further the principles of comity, finality, and federalism[.]'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *Williams v. Taylor*, 529 U.S. 420, 436 (2000)). The Act "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.*

One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d). That provision prohibits federal habeas relief with

respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis in original). A state court has adjudicated a claim "on the merits[,]" and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). "Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes only "'the holdings, as opposed to the dicta, of [Supreme Court] decisions.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012)). The state court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the

Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). And "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state court's determination of fact is unreasonable under § 2254(d)(2) only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (quoting § 2254(e)(1)); *see also Rice v. White,* 660 F.3d 242, 250 (6th Cir. 2011). "This standard requires the federal courts to give considerable deference to state court decisions." *Forensic v. Birkett*, 501 F.3d 469, 472 (6th Cir. 2007). The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Indeed, the Supreme Court has repeatedly emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state-court adjudications of federal claims. The Supreme Court has admonished that a reviewing court may not "treat[] the unreasonableness question as a test of its confidence in the result it would reach under *de novo* review[,]" and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."). Rather, § 2254(d) "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state

criminal justice systems,'" and does not function as a "substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03, quoting *Jackson*, 443 U.S. at 333 n.5 (Stevens, J., concurring in judgment). Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103. The Supreme Court readily acknowledges that this is a very high standard, observing that: "If this standard is difficult to meet, that is because it was meant to be." *Id*. at 102.

### C. *Exhaustion and Procedural Default*

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Procedural default is "a critical failure to comply with state procedural law," *Trest v. Cain*, 522 U.S. 87, 89 (1997), resulting in a bar to federal habeas review unless the petitioner has a sufficient basis for having the default excused,

11

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "A claim may become procedurally defaulted in two ways." *Williams*, 460 F.3d at 806. "First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court." *Id*. "If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted." *Id*. "Second, a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures'" *Id*. (quoting *O'Sullivan*, 526 U.S. at 847). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. A claim is fairly presented when it has been asserted as a federal constitutional issue at every state of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

Procedural default, however, can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### D. *Cognizable Federal Claim*

A petition for a writ of habeas corpus filed by a petitioner imprisoned under the judgment

of a state court is governed by 28 U.S.C. § 2254(a), which permits the state prisoner to challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* To say that a petitioner's claim is not cognizable on habeas review is another way of saying that his claim "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991).

Federal habeas corpus relief "does not lie for errors of state law[.]" *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and the federal court is bound by the state court's interpretations of state law. *See, e.g.*, *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). "[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Allen*, 845 F.2d at 614 (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

## VI.    ANALYSIS

Mr. Quinn raises four grounds for relief in his habeas petition: (1) there was insufficient evidence to support his gross sexual imposition convictions; (2) the trial court violated his due process rights under the Fourteenth Amendment by allowing prior bad acts evidence to be presented against him, in violation of Evid. R. 404(B); (3) the trial court violated his due process rights under the Fourteenth Amendment by allowing prejudicial evidence to be presented against him, in violation of Evid. R. 403(A); and (4) the prosecuting attorney violated Mr. Quinn's right to due process under the Fourteenth Amendment when the government failed to disclose video evidence, which was later played at Mr. Quinn's trial. For the following reasons, I find that all of Mr. Quinn's claims are procedurally defaulted, noncognizable, and/or meritless.

### A.  *Ground One: Sufficiency of the Evidence*

Mr. Quinn's Ground One claim alleges that his convictions for gross sexual imposition were not supported by sufficient evidence. (ECF Doc. 1, PageID#12-14). He raises two arguments in support of his Ground One claim: (1) the victim never testified that she was asleep or otherwise impaired in her ability to consent or resist; and (2) no reasonable trier of fact could determine that the victim was sometimes asleep when the contact allegedly occurred. (*Id.*).

Respondent asserts that this claim is procedurally defaulted because Mr. Quinn did not present this claim to the Ohio Supreme Court for review. (ECF Doc. 6, PageID#87-88). Further, Respondent contends that Mr. Quinn does not establish cause and prejudice or actual innocence to excuse this procedural default. (*Id.* at PageID#90-91). In the alternative, Respondent asserts that Mr. Quinn's Ground One claim is meritless. (*Id.* at PageId#93-97). Mr. Quinn argues in his Traverse that he has not procedurally defaulted his manifest weight or sufficiency of the evidence claims within Ground One.

For the following reasons, I find that Mr. Quinn's Ground One claim is procedurally defaulted.  And to the extent that Mr. Quinn attempts to preserve a portion of his Ground One claim by challenging the manifest weight of the evidence (*see* ECF Doc. 7, PageID#938-39), such a claim is not cognizable.

### 1.  <u>Procedural Default (Sufficiency of the Evidence)</u>

Mr. Quinn's Ground One claim is procedurally defaulted because he failed to raise this argument to the Ohio Supreme Court for review. Before seeking a writ of habeas corpus in federal court, a petitioner must properly exhaust his state court remedies by fairly presenting all constitutional claims to *all* levels of the state courts. A petitioner may procedurally default his constitutional claim by failing to present the claim to all appropriate state courts prior to that

through the state's "ordinary appellate review procedures." *O'Sullivan*, 526 U.S. at 847. Ohio's "ordinary appellate review process" means a defendant must timely present his on-the-record constitutional claim to the trial court, court of appeals, and the Ohio Supreme Court on direct review. *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003).

Mr. Quinn's arguments regarding procedural default are not well-taken because he raised the arguments contained in his habeas petition to the Ohio Court of Appeals, ***not*** the Ohio Supreme Court. (ECF Doc. 7, PageID#938-39). Specifically, Mr. Quinn challenged the sufficiency of the evidence for his gross sexual imposition conviction in his direct appeal to the Ohio Court of Appeals. (ECF Doc. 6-1, PageID#159-63), but he did not present these arguments to the Ohio Supreme Court. Rather, his arguments to the Ohio Supreme Court focused on the trial court's admission of "other-acts" evidence. (*Id.* at PageID#263-76). Indeed, Mr. Quinn set forth *no* assignment of error to the Ohio Supreme Court regarding manifest weight or sufficiency of the evidence. (*Id.* at PageID#262). Thus, despite presenting his manifest weight of the evidence and sufficiency of the evidence claims to the Ohio Court of Appeals, Mr. Quinn procedurally defaulted by failing to further pursue this issue to the Ohio Supreme Court.

To excuse procedural default, Mr. Quinn would need to establish cause or prejudice. But Mr. Quinn's Traverse is silent regarding any cause that would explain his failure to raise his sufficiency of the evidence claim at every level of the ordinary appellate review process. (ECF Doc. 7, PageID#938-39). Nor can ineffective assistance of counsel serve as sufficient cause to excuse procedural default here; that is so because the exhaustion doctrine generally requires that an ineffective assistance of counsel claim be presented to the state courts as an independent claim before it can be used to establish cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986).

15

In the instant case, Mr. Quinn did not raise an ineffective assistance of counsel claim on direct appeal, nor did he file a 26(B) application alleging ineffective assistance of appellate counsel. And as Respondent correctly points out, Mr. Quinn's sufficiency of the evidence claim pertains to evidence within the record.  Thus, Mr. Quinn was required to raise an ineffective assistance of counsel claim on direct appeal. *Jacobs v. Mohr*, 265 F.3d 407 (6th Cir. 2001). Because this ineffective assistance of counsel claim was required to be raised on direct appeal, this claim would be barred by the doctrine of *res judicata* and procedurally defaulted. *State v. Perry*, 10 Ohio St. 2d 175 (1967).

I note that Mr. Quinn alleged an ineffective assistance of counsel claim in his petition for post-conviction relief.[2] Specifically, he asserted that his trial counsel was ineffective mainly for failing to properly investigate and challenge the testimony of the victim. *State v. Quinn*, 2021-Ohio-1764, ¶10. But this claim does not demonstrate cause for failing to assert a claim that his convictions were not supported by sufficient evidence (which involves evidence within the record) at every level of Ohio's ordinary appellate review process. Moreover, based on independent inquiry, it does not appear that Mr. Quinn challenged the Ohio Court of Appeals' rejection of his petition to the Ohio Supreme Court. Thus, even if Mr. Quinn had raised ineffective assistance of counsel as cause, this argument would fail.

Because Mr. Quinn fails to demonstrate cause, I need not consider whether there was actual prejudice. *Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007) (finding that the court does not need to engage in actual prejudice analysis where the habeas petitioner fails to establish cause).

---

[2] As discussed in the "Relevant State Procedural History" section of this Report and Recommendation, Mr. Quinn filed a petition for post-conviction relief. At the time of filing of his federal habeas corpus petition, this petition was still pending in the Ohio Court of Appeals. On May 24, 2021, the Ohio Court of Appeals affirmed the decision of the Medina County Court of Common Pleas. Based on an independent review of the trial court's docket, it does not appear that Mr. Quinn appealed this decision to the Ohio Supreme Court.

Nor does Mr. Quinn argue – much less establish – actual innocence because he presents no new, reliable evidence to support such an allegation. *Schlup*, 513 U.S. at 324. Accordingly, I recommend that the Court deny and/or dismiss Mr. Quinn's Ground One claim because it is procedurally defaulted.

### 2. Cognizability (Manifest Weight of the Evidence)

To the extent that Mr. Quinn attempts to preserve the portion of his Ground One claim challenging the manifest weight of the evidence (*see* ECF Doc. 7, PageID#938-39), such a claim is not cognizable. An argument that a conviction was against the manifest weight of the evidence is a *state law* argument. *See Gibson v. Miller*, No. 5:15-cv-119, 2016 WL 6277229, at *1 (N.D. Ohio Oct. 27, 2016) ("[C]ontentions that a conviction is contrary to the manifest weight of the evidence also do not raise cognizable claims."); *Schwartzman v. Gray*, No. 17-3859, 2018 U.S. App. LEXIS 27193, at *8 (6th Cir. 2007) ("A manifest-weight-of-the-evidence claim in Ohio is a state-law claim that is similar to but ultimately different from a federal constitutional claim that the evidence was insufficient to support a conviction.").

Under Ohio law, an argument that a conviction is against the manifest weight of the evidence "requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Hess v. Eberlin*, No. 2:04-cv-1144, 2006 WL 20900093, at *6 (S.D. Ohio Jan. 17, 2006) (citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1983)). Because a federal district court does not function as an additional state appellate court and is not vested with the authority to conduct such an exhaustive review, this Court cannot consider whether Mr. Quinn's conviction was against the manifest weight of the evidence. Accordingly, I recommend that the

Court dismiss the portion of Mr. Quinn's Ground One claim asserting a manifest weight challenge because it is not cognizable.

### 3. **Merits (Sufficiency of the Evidence)**

In the alternative, I recommend that the Court reject Mr. Quinn's Ground One sufficiency of the evidence claim because it lacks merit.

### a. **Standard of Review**

Challenges to a state court conviction based on the sufficiency of the evidence are properly cognizable in a federal habeas corpus petition. *Jackson*, 443 U.S. 309, 321 (1983). In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The reviewing court may not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [fact-finder]." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

On habeas review, this question involves "a double layer of deference[.]" *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). First, the court "must view the evidence in the light most favorable to the prosecution, and determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Mathis v. Colson*, 528 F. App. 470, 476 (6th Cir. 2013) (quoting *Jackson*, 443 U.S. at 319). "Second, 'even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable.'" *Id.* (quoting *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir.2009)). Under the *Jackson* standard, a habeas petitioner "who challenges the sufficiency of the evidence to

18

sustain his conviction faces a nearly insurmountable hurdle." *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

### b. Ohio Court of Appeals Decision

The Ohio Court of Appeals addressed Mr. Quinn's manifest weight and sufficiency of the evidence challenge as follows:

{¶8} In his fourth assignment of error, Mr. Quinn argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. Although sufficiency and manifest weight are two separate, legally distinct arguments and should be argued separately, Mr. Quinn has chosen to argue them together in his brief, and we will therefore address them together. *See, e.g., State v. Gilbert*, 9th Dist. Lorain No. 17CA011209, 2018-Ohio-1883, ¶ 5; *State v. Dean*, 9th Dist. Lorain No. 18CA011290, 2019-Ohio-1391, ¶ 5.

{¶9} Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id., quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶10} Mr. Quinn was convicted in this case of two counts of felony-three gross sexual imposition, under R.C. 2907.05(A)(4), which provides: "No person shall have sexual contact with another, not the spouse of the offender [or] cause another, not the spouse of the offender, to have sexual contact with the offender * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." Mr. Quinn was also convicted of nine counts of felony-four gross sexual imposition, under R.C. 2907.05(A)(5), which provides: "No person shall have sexual contact with another, not the spouse of the offender [or] cause another, not the spouse of the offender, to have sexual contact with the offender * * * when * * * [t]he ability of the other person to resist or consent * * * is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person * * * is substantially impaired because of a mental or physical condition * * *."

19

{¶11} "Sexual contact" includes "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). "A person acts purposely when it is the person's specific intention to cause a certain result * * *." R.C. 2901.22(A). This Court has consistently held that a trier of fact may infer a purpose of sexual arousal or gratification from the type, nature, and circumstances of the contact, along with the personality of the defendant. *E.g.*, *State v. Pistawka*, 9th Dist. Summit No. 27828, 2016-Ohio-1523, ¶ 16. Furthermore, sleep is considered a "mental or physical condition" sufficient to substantially impair a victim's ability to resist unwelcomed sexual contact within the meaning of R.C. 2907.05(A)(5). *State v. Porter*, 9th Dist. Medina No. 12CA0061-M, 2013-Ohio-3969, ¶ 19.

{¶12} Mr. Quinn first argues that insufficient evidence was presented at trial to establish that S.L.'s ability to resist or consent was substantially impaired due to being asleep because she only testified that she pretended to be asleep.

{¶13} Our review of the record reveals that S.L. testified she would normally sleep on her stomach, wearing only her underwear, shorts, and a t-shirt in bed. According to S.L., Mr. Quinn would "come into [her] room, keep the lights off, close the door, sit next to [her] on the bed, and rub [her] back." She explicitly testified that she would be asleep "sometimes" and would not hear him come into the room. Mr. Quinn would rub her lower back under her clothes and "would rub [her] butt and the outside of [her] vagina, the side of [her] breast." S.L. would pretend to be asleep when he rubbed the sides of her breasts, but would sometimes "jolt" her body and say, "Go away. Get out." She testified that Mr. Quinn would just tell her to relax. He would remove her underwear and "would spread [her] bottom with his hands and [her] vagina with * * * his thumbs on the side * * *." He would also touch the side of her breasts under her shirt, and she would "put [her] arms down very tight to try and restrict him." Sometimes he would stop, but sometimes he would continue touching her. She believed that the touching was not accidental, but that Mr. Quinn was "feeling it, feeling [her], enjoying it." These almost daily incidents would last for fifteen-to-twenty minutes before Mr. Quinn would finally leave her bedroom. She testified that, during one particular instance when she was sixteen or seventeen, she was sleeping on her stomach and Mr. Quinn "crawled up" behind her, crouched over her with his underwear still on, and began "rubbing his penis against [her] butt." He eventually "left semen on [her] butt." Thus, S.L. indeed provided graphic details of how the molestation would continue once she woke up, and she admitted that she sometimes still pretended to remain asleep or tried to "restrict" Mr. Quinn's touches during the incidents. Her detailed account of Mr. Quinn's actions and her own reactions throughout the sexual assaults, however, does not contradict or detract from her testimony that she would "sometimes" still be asleep in her bed, unaware that Mr. Quinn had even entered her room, when he began touching her inappropriately.

20

{¶14} Mr. Quinn also argues that even if S.L. was "sometimes" asleep, no reasonable trier of fact could determine that that element was established for every count of felony-four GSI. We find no merit in this argument. The State presented evidence that the sexual assaults occurred almost daily between January 1, 2008, and June 30, 2012. Instead of charging Mr. Quinn with hundreds of felonies, the State chose to charge him with nine felony-four GSI's, each of which included a different six-month time span. Thus, the State was not required to prove that each and every sexual assault during those four-and-a-half years occurred while S.L. was asleep, only that at least one GSI every six months occurred while she was asleep.

{¶15} After a review of the record, this Court concludes that the State presented sufficient evidence, if believed, to establish that Mr. Quinn committed at least one GSI every six months between January 1, 2008, and June 30, 2012, while S.L. was asleep. Based on S.L.'s testimony, a jury could have reasonably determined the State proved the element of a "mental or physical condition," i.e., sleep, for each of the nine counts of felony-four GSI beyond a reasonable doubt.

{¶16} When a conviction is challenged as being against the manifest weight of the evidence, this Court has stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). See also Otten at 340.

{¶17} In arguing that his convictions were against the manifest weight of the evidence, Mr. Quinn contends that the State relied on "purely circumstantial evidence presented through * * * testimony" without any physical or otherwise corroborating evidence. This argument is without merit.

{¶18} It is axiomatic that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value * * *." *Jenks*, 61 Ohio St.3d 259, at paragraph one of the syllabus. Nevertheless, the State presented a wealth of direct evidence at trial, including the victim's testimony. " '[T]he weight to be given the evidence and

the credibility of the witnesses are primarily for the trier of the facts.' " *State v. Haydon*, 9th Dist. Summit No. 27737, 2016-Ohio-4683, ¶ 28, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony. *See State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30. The jury in this case chose to believe S.L.'s allegations that Mr. Quinn had repeatedly molested her in her bedroom over the span of many years and found that the State had proven eleven counts of GSI beyond a reasonable doubt. Physical evidence or evidence corroborating the victim's testimony is not required to support a conviction for GSI. *State v. Thomas*, 9th Dist. Wayne No. 10CA0003, 2010-Ohio-6373, ¶ 12. This Court has consistently held that "[w]e will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13.

{¶19} Mr. Quinn further claims that the State's evidence was "suspect" because S.L. did not come forward with her molestation allegations until 2016, *i.e.*, nine years after the sexual abuse allegedly started. He questions why she did not reveal her allegations sooner, either to the police or to her counselors, and suggests that discussing the cell phone video with police back in 2012 would have been the "perfect opportunity" to disclose the sexual abuse. S.L. and C.R. both testified that S.L. first broke down and told C.R., S.L.'s father, and her father's girlfriend about the molestation sometime in either 2012 or 2013. S.L. explained that she never went to the police with her sexual abuse allegations for many years for a variety of reasons, including shame and embarrassment. Mr. Quinn directs us to no law which required S.L. to report her sexual abuse to the authorities any sooner than she did in this case, and we accordingly find no merit in this argument. *See* App.R. 16(A)(7).

{¶20} In reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we cannot say that the jury, in resolving any conflicts in the evidence, clearly lost its way and created a manifest miscarriage of justice. See Otten at 340. Mr. Quinn has also not demonstrated how this is an exceptional case where the evidence presented weighs heavily in his favor and against conviction. *See Thompkins* at 387.

{¶21} Mr. Quinn's fourth assignment of error is overruled.

*Quinn*, 2019-Ohio-3980, ¶¶ 8-21.

### c. Analysis

Mr. Quinn's sufficiency of the evidence Ground One claim lacks merit. Mr. Quinn

contends that the State failed to elicit evidence that would support a finding that the victim, S.L.,

22

was asleep at the time Mr. Quinn sexually assaulted her. (ECF Doc. 1, PageID#13-14). But the Ninth District Court of Appeals, as reproduced above, rejected this precise argument. Specifically, the Ninth District determined that the record evidence demonstrates that the victim was asleep at the beginning of some of the sexual assault incidents. The victim testified that Mr. Quinn's abuse began when he woke her up to attend school. (ECF Doc. 6-2, PageID#445). The victim stated that she would typically be sleeping on her stomach. (*Id.*). The victim testified that Mr. Quinn would rub underneath her clothes and touch the sides of her breasts, butt, and the outside of her vagina. (*Id.* at PageID#444-45). The victim further testified that Mr. Quinn took these actions nearly every day for approximately fifteen to twenty minutes before he left her room. (*Id.* at PageID#450).

Mr. Quinn argues that the victim testified that she sometimes pretended to be asleep. Yet the victim also testified that the molestation occurred sometimes when she was asleep because she did not hear Mr. Quinn enter the room. (*Id.* at PageID#446-47). The victim described a specific incident when she was approximately sixteen or seventeen years old where she was sleeping on her stomach, and Mr. Quinn crawled up behind her, rubbed his penis against her butt, and eventually "left semen on [her] butt." (*Id.* at PageID#509-10). Thus, while the victim testified that she would sometimes pretend to be "asleep," the Ohio Court of Appeals concluded from the record evidence that the victim would "sometimes" still be asleep in her bed when Mr. Quinn began to touch her inappropriately, and at that time she was unaware that Mr. Quinn had even entered her room. Accordingly, it would be reasonable for a jury to infer from the victim's testimony that she would sometimes be asleep when Mr. Quinn began molesting her and would then pretend to be asleep. (*Id.* at PageID#450).

Mr. Quinn also argues that even if the victim was sometimes asleep, no reasonable trier of fact could determine that she was asleep during each count because the State did not present a time

frame for the alleged abuse.  (ECF Doc. 1, PageID#14). The Ohio Court of Appeals also rejected this argument. The state appellate court determined that the State presented evidence that the sexual assaults occurred almost daily for nearly four years between January 1, 2008, and June 30, 2012. *Quinn*, 2019-Ohio-3980, ¶15. The victim further testified that these incidents would take place almost every morning when Mr. Quinn woke her up to attend school, and that the first incident she could recall happened when she was 11 years old. (ECF Doc. 6-2, PageID#445, 450).

Moreover, the Sixth Circuit has addressed the question of whether a discrepancy between details in a bill of particulars and the evidence at trial is sufficient to sustain a habeas challenge to the sufficiency of the evidence. *Geboy v. Brigano*, 489 F.3d 752, 762 (6th Cir. 2007) (dismissing petitioner's sufficiency of the evidence claim). The Sixth Circuit in *Geboy* examined both Ohio and federal law and concluded that "it would appear unlikely that discrepancy between a bill of particulars and the evidence at trial could sustain [a sufficiency of the evidence] challenge." *Id.* In addressing Ohio law, the *Geboy* court observed that "Ohio courts have concluded in a number of cases that precise dates and times were not elements of the charged offenses, and thus need not have been set forth in the indictment." *Id.* (citing *State v. Lawrinson*, 49 Ohio St.3d 238, 551 N.E. 2d 1261, 1262 (1992); *State v. Grewell*, 45 Ohio St.3d 4, 543 N.E. 2d 93, 98-99 (1989); *State v. Sellards*, 17 Ohio St. 3d 169, 478 N.E.2d 781, 785 (1985); *State v. Daniel*, 97 Ohio App.3d 548, 647 N.E.2d 174, 180 (1994)). Mr. Quinn does not demonstrate—nor does the case law support— that the range of times is an essential element of the offenses for which Mr. Quinn was charged. Here, the Ohio Court of Appeals reasonably determined, relying on Ohio law, that the State satisfied the elements of the offenses.

Based on the evidence discussed above, any rational trier of fact could have found the essential elements of the crime here beyond a reasonable doubt based on the facts in the record.

*Jackson*, 443 U.S. at 319; *United States v. Craft*, 495 F.3d 259 (6th Cir. 2007). Moreover, the Sixth Circuit has held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction. *United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty."). Based on the victim's testimony and applying the second layer of AEDPA deference, I find that the Ohio Court of Appeals reasonably concluded that the jury had sufficient evidence to conclude that the essential elements to support his gross sexual imposition convictions. Mr. Quinn does not establish that this ruling was an unreasonable application of clearly established federal law as required by AEDPA or that the appellate court unreasonable applied the law to the facts of his case. 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412-13; *Harrington*, 562 U.S. at 103. Accordingly, I recommend that this Court deny Mr. Quinn's Ground One claim because it lacks merit.

**B.** **Grounds Two and Ground Three: Prior Bad Acts Evidence (Evid. R. 404(B)) and Prejudicial Evidence (Evid. R. 403(A))**

Because Mr. Quinn's Grounds Two and Three claims allege that the trial court violated his Fourteenth Amendment due process rights by admission of evidence in violation of state evidentiary rules, this Report and Recommendation will address them together for logical flow. Mr. Quinn's Ground Two claim alleges that the trial court violated his federal due process rights by permitting prior bad acts evidence to be presented in violation of Evid. R. 404(B). (ECF Doc. 1, PageID#14-16). Mr. Quinn's Ground Three claim alleges that the trial court violated his federal due process rights by permitting prejudicial evidence to be presented against him in violation of Evid. R. 403(A). (*Id.* at PageID#17). Respondent argues that these claims are procedurally defaulted, not cognizable, and meritless. (ECF Doc. 6, PageID#85-87, 98-104).

**1. <u>Procedural Default</u>**

**a. Parties' Arguments**

25

Respondent contends that these claims are procedurally defaulted because Mr. Quinn's arguments on direct appeal focused exclusively on whether the admission of the video evidence was appropriate under the Ohio Rules of Evidence. (ECF Doc. 6, PageID#85). Specifically, Respondent argues that Mr. Quinn relied exclusively on the Ohio Rules of Evidence and Ohio-specific case law in support of his arguments. (*Id.*). Because Mr. Quinn did not argue these evidentiary issues violated his federally protected constitutional rights, Respondent maintains that Mr. Quinn did not fairly present these claims. (*See id.* at PageID#86-87). Finally, because Mr. Quinn's evidentiary claims are based on allegations that should have been raised as a federal constitutional violation on direct appeal, Respondent argues that *res judicata* precludes Mr. Quinn's claims from pursuing these issues within the Ohio courts. (*Id.* at PageID#87). Thus, Respondent states that Mr. Quinn's claims are procedurally defaulted because his evidentiary claims are barred from merits review. (*Id.*).

Mr. Quinn argues that his claim is not procedurally defaulted because the Ohio Supreme Court "laid a framework" for Ohio courts to determine the admissibility of other-acts evidence. (*See* ECF Doc. 7, PageID#937). Mr. Quinn asserts that the Ohio Supreme Court determined within that framework that the Ohio Rules of Evidence are analogous to the Federal Rules of Evidence. (*Id.*). Thus, Mr. Quinn contends that he presented his evidentiary arguments in his direct appeal to the Ohio Court of Appeals and the Ohio Supreme Court. (*Id.* at PageID#938). Based on Mr. Quinn's allegation that he fairly presented these issues, he argues that Grounds Two and Three are not procedurally defaulted. (*Id.*).

### b. Analysis

Mr. Quinn's Ground Two and Ground Three claims are procedurally defaulted. As Respondent argues, Mr. Quinn did not frame either of these grounds for relief as a federal

constitutional issue in his direct state court review. Rather, he framed these arguments as a state law issue and relied solely on state law arguments. Specifically, Mr. Quinn raised the following assignments of error to the Ohio Court of Appeals:

(1) The Trial Court erred in allowing a video to be played during trial. The video violated ***Ohio Rule of Evidence 403(A)***, as it bore no probative value to the proceedings, confused the jury, and was unfairly prejudicial to the Defendant.

(2) The Trial Court erred in allowing the video to be played in that the video was admitted contrary to ***Ohio Rule of Evidence 404(B)***. It was evidence of another alleged crime of Defendant, which had no bearing or relation to the crimes Defendant allegedly committed.

(ECF Doc. 6-1, PageID#137) (emphasis added). Review of Mr. Quinn's analysis of these state law arguments reveals that he failed to cite any clearly established federal or Supreme Court case law, made no argument regarding federal due process or any other federal constitutional right, and relied solely on state evidentiary rules and case law. (*Id.* at PageID#143-52).

Mr. Quinn again raised these state law arguments in his appeal to the Ohio Supreme Court and asserted the following propositions of law:

Proposition of Law I: When reviewing a trial court's decision to admit "other-acts" evidence for abuse of discretion, an appeals court must consider the impact of the offending evidence on the verdict, the strength of the remaining evidence after the tainted evidence is removed from the record, and declare a belief that the error was not harmless beyond a reasonable doubt.

Proposition of Law II: A trial court to improperly admits "other-acts" evidence and unfairly prejudicial evidence at trial where said evidence is not charged in the indictment; related to the charged offenses; is inflammatory; was not provided to defense counsel as part of discovery; and differs from an omits—without explanation—portions of the original video.

(*Id.* at PageID#262). Mr. Quinn's brief to the Ohio Supreme Court also cites no clearly established federal or Supreme Court case law, makes no argument regarding federal due process or any other federal constitutional rights, and only relies on state evidentiary rules and case law in support of his argument. (*Id.* at PageID#267-76).

27

In his Traverse, Mr. Quinn appears to be arguing that the Ohio Supreme Court determined that the Ohio evidentiary rules are an analogue of the Federal Rules of Evidence. (*See* ECF Doc. 7, PageID#937-38). But Mr. Quinn made no such argument in his direct appeal. (*See generally* ECF Doc. 6-1, PageID#143-52, 267-76). Further, Mr. Quinn's assertion completely overlooks the fact that Mr. Quinn, represented by counsel throughout his direct appeal, raised his arguments regarding the trial court's playing of and admission of the cell phone video into evidence at trial as a state-law issue, *not* a federal issue. (*Id.*). To fairly present a federal constitutional claim, a petitioner must present his claim as a federal constitutional issue, not as a state-law issue. *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). Further, a petitioner does not convert a claim asserting state law error into a constitutional claim by merely alleging that the State's failure to follow its own rule violated his due process rights. *Rivera v. Illinois*, 556 U.S. 148, 158 (2009); (*See* ECF Doc. 1, PageID#7).

Here, Mr. Quinn presents claims that are legally distinct from those raised during direct appeal. For a claim to be properly exhausted for the court's consideration, the claim must have been presented to the state courts under the same theory in which it is later presented in federal court. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Thus, Mr. Quinn failed to fairly present his evidentiary claims as federal constitutional issues during his direct appeal. And because he failed to fairly present these claims as such during direct appeal, this claim is procedurally defaulted.

Finally, as discussed in more depth in Ground One, Mr. Quinn does not establish cause or prejudice to excuse this procedural default. Nor does he establish a miscarriage of justice (*i.e.*, actual innocence) as an alternative excuse for his procedural default. Accordingly, I recommend that the Court deny and/or dismiss Mr. Quinn's Ground Two and Ground Three claims as

procedurally defaulted because he did not fairly present them as federal constitutional issues to the Ohio Court of Appeals or the Ohio Supreme Court.

### 2. Cognizability

Alternatively, if these claims are not procedurally defaulted, the evidentiary arguments that Mr. Quinn presents in Grounds Two and Three are not cognizable. Generally, state evidentiary issues are not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th. Cir. May 12, 2003) ("Errors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus."), *citing Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.1983), *cert. denied*, 464 U.S. 962 (1983); *see also Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001) ("Because this is an appeal from a habeas corpus decision and not an appeal from [petitioner's] state conviction, we do not pass upon errors in the application of state law, especially rulings regarding the admission or exclusion of evidence."). Grounds Two and Three of Mr. Quinn's habeas petition only challenge the trial court's alleged misapplication of state law despite Mr. Quinn's federal constitutional framing of this issue. (*See* ECF Doc. 1, PageID#14-17). Thus, I recommend that the Court deny and/or dismiss these claims because they do not present an issue cognizable on federal habeas review.

### 3. Merits

In the alternative, I recommend that the Court reject Mr. Quinn's Ground Two and Ground Three claims because they lack merit. Even if these claims were cognizable, this court must give AEDPA deference to the state appellate court's adjudication of the claims. *Perkins v. McKee*, 411 F. App'x 822, 828 (6th Cir. 2011). In analyzing Mr. Quinn's claims, the Ohio Court of Appeals, applying the Ohio Rules of Evidence, stated:

{¶24} On appeal, Mr. Quinn is only challenging the trial court's decision to allow the playing of the cell phone video and the admission of the video into evidence; he is not challenging any of the trial testimony related to the video. The decision to admit or exclude evidence lies within the sound discretion of the trial court. State v. Sage, 31 Ohio St.3d 173, 180, (1987). We therefore review a trial court's decision to admit other acts for an abuse of discretion. *State v. Higgins*, 9th Dist. Summit No. 27700, 2018-Ohio-476, ¶ 44. The term abuse of discretion indicates that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶25} Mr. Quinn argues that the trial court erred in playing and admitting the cell phone video at trial in violation of Evid.R. 403(A) and 404(B). "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). See also R.C. 2945.59. As the Supreme Court of Ohio has stated,

> the real issue when Evid.R. 404(B) evidence is improperly admitted at trial is whether a defendant has suffered any prejudice as a result. If not, the error may be disregarded as harmless error. And while courts may determine prejudice in a number of ways and use language that may differ, they focus on both the impact that the offending evidence had on the verdict and the strength of the remaining evidence. Both the error's impact on the verdict and the weight of the remaining evidence must be considered on appellate review.

*State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶ 25.

{¶26} As noted above Mr. Quinn is only challenging the trial court's decision to allow the playing of the cell phone video and the admission of the video into evidence. On appeal, he has not challenged any of the trial testimony related to the video, which was undeniably extensive. S.L. testified about finding the cell phone in record mode in her room, about what she was doing immediately before finding the phone, and about the aftermath of finding the phone recording her. In fact, almost all of the witnesses testified in some way about the video. In addition, S.L. read from the statement she provided to police about finding the cell phone and that statement was admitted into evidence as a defense exhibit. Even without seeing the contents of the video, given the evidence before it, it seems difficult to fathom that the jury would have questioned or doubted that a video as described by the witnesses existed. Thus, even assuming without deciding that the video should not have been played for the jury or admitted at trial because it represented improper

other acts evidence, this Court concludes, after considering the totality of the record, that any error in playing or admitting it was harmless. *See* Crim.R. 52(A) (stating "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded").

{¶27} Given the arguments made on appeal, even absent the playing or admittance of the video, the jury still would have heard the extensive testimony about the video and its contents. In light of that other evidence that was admitted and not challenged on appeal, we cannot conclude that Mr. Quinn was prejudiced by the playing and admission of the video. Further, after weighing the remaining evidence, this Court concludes there was evidence before the jury which established beyond a reasonable doubt Mr. Quinn's guilt. *See Morris* at ¶ 33.

*Quinn*, 2019-Ohio-3980, at ¶¶ 24-27.

Based on the record, I cannot conclude that the Ohio Court of Appeals erred in its conclusion. In the instant case, Mr. Quinn's defense counsel at some point during the trial objected to the playing of the video, and that objection was grounded in the Ohio rules of evidence and the prejudicial nature of the evidence. (ECF Doc. 6-2, PageID#455). But this objection was untimely because the victim already discussed the video tape and Mr. Quinn's recording of it at trial with no objection from Mr. Quinn's defense counsel. (*Id.* at PageID#426-441). And Mr. Quinn's counsel cross-examined the victim at great length about the incident portrayed in the cell phone video. (*Id.* at PageID#488-502). For example, Mr. Quinn's counsel questioned the victim and asked her whether she set up the cell phone to record herself. (*Id.* at PageID#491). Trial counsel also questioned the victim regarding details of the video and elicited testimony that the video showed Mr. Quinn waking the victim up and not molesting her on the date of the recording. (*Id.* at PageID#492).

During Mr. Quinn's case-in-chief, his defense counsel continued to ask questions regarding the video and the circumstances involving that incident. For example, defense counsel presented a recorded conversation between the victim and her mother about the contents of the cell phone video. (*See generally id.* at PageID#598-613). Mr. Quinn's counsel also asked the victim's mother

31

about Mr. Quinn's character while questioning the victim's mother about the video. (*Id.* at PageID#681). The victim's mother testified that the victim lied about the contents of the video. (*Id.* at PageID#739-40). Significantly, Mr. Quinn's counsel stressed this point during his closing argument. (*Id.* at PageID#779).

Mr. Quinn also used the disputed cell phone video to attempt to demonstrate that the victim had a vindictive motive and was willing to lie to destroy Mr. Quinn's relationship with her mother. (*See id.* at PageID#576-77). Earlier at trial, Mr. Quinn disputed the credibility of the victim by pointing out that - after the video was provided to law enforcement - the victim never referenced any of the incidents she testified about in trial to any of the investigating officers or any family members. (*Id.* at PageID#494-95). Mr. Quinn's counsel again emphasized this point during his closing argument. (*Id.* at PageID#776-77). As demonstrated above, Mr. Quinn asserted from the outset of this case that the victim was lying, and that the video involved false allegations.

Although Mr. Quinn argues that cell phone video is not relevant, the testimony of the officer that originally investigated the complaint suggests otherwise. That is so because Mr. Quinn informed the officer that he typically woke the victim up for school every day. (*Id.* at PageID#466). Mr. Quinn stated that the victim told him she was sore from working out the day before and requested a back massage. (*Id.*). Mr. Quinn testified that the victim was wearing a t-shirt and underwear and admitted to pulling up this t-shirt, pulling down the comforter, and rubbing the victim's back. (*Id.*). Mr. Quinn's testimony is similar to the victim's testimony regarding how Mr. Quinn molested her almost every day when he woke her up for school. Mr. Quinn, however, offered an innocent explanation for his actions and the cell phone video located by law enforcement at trial, *i.e.,* that he merely put his phone down during the massage, forgot his phone was there, and the victim found the phone minutes later. (*Id.*). Significantly, the officer testified

under cross-examination that Mr. Quinn provided this video to law enforcement willingly, and that there was no evidence that Mr. Quinn had tried to erase the contents of the phone. (*Id.* at PageID#568). Based on both the prosecution and defense's multiple references to the video, description of the video's contents, and the extensive testimony elicited by both parties, Mr. Quinn fails to establish how this video and testimony related to it were not relevant to the case.

The Ohio Court of Appeals' decision did not involve an unreasonable application of federal law as determined by the Supreme Court of the United States or an unreasonable determination of facts. While Mr. Quinn argues that the trial court violated his due process rights, he fails to show that the trial court's "ruling is so egregious that it results in a denial of fundamental fairness." *Bugh*, 329 F.3d at 512; *Broom v. Mitchell*, 441 F.3d 392, 406 (6th Cir. 2006), *cert. denied*, 549 U.S. 1255 (2007). Courts define the category of infractions that violate fundamental fairness "very narrowly." *Bugh*, 329 F. 3d at 512. The Sixth Circuit has recognized that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Id.*

The Ohio Court of Appeals did not conclude that the cell phone video was inadmissible. Rather, the state appellate court concluded - without deciding whether it should have been played for the jury or admitted at trial - that the totality of the record (*i.e.*, the prosecution and defense's multiple references to the video, description of the video's contents, and the extensive testimony elicited by the State and Mr. Quinn's case-in-chief) showed Mr. Quinn experienced no prejudice by the playing of or admission into evidence of the cell phone video. *Quinn*, 2019-Ohio-3980, ¶¶26-27. The record evidence, as demonstrated above, amply supports the appellate court's conclusion. Significantly, the evidence Mr. Quinn now disputes is the same evidence he himself

repeatedly relied upon at trial to attempt to attack the victim's credibility and bolster his own defense.

Because Mr. Quinn fails to demonstrate that he experienced actual prejudice from the alleged admission of improper evidence, any alleged error in the admission of the video was harmless. Accordingly, the Ohio Court of Appeals' decision was not unreasonable, and I recommend that the Court dismiss Mr. Quinn's Ground Two and Ground Three claims because they lack merit.

### C. *Ground Four:* **Brady** *Violation*

Mr. Quinn alleges that the government committed a *Brady* violation because the prosecuting attorney failed to disclose video evidence, which was later played at Mr. Quinn's trial. (ECF Doc. 1, PageID#18-19). Respondent asserts that this ground is procedurally defaulted because Mr. Quinn failed to fairly present this ground to the Ohio Court of Appeals. (ECF Doc. 6, PageID#81-83). Respondent further argues that, even if this Court determines Mr. Quinn did present this *Brady* issue on direct appeal, he compounded this procedural default by failing to make any argument alleging a *Brady* claim to the Ohio Supreme Court. (*Id.* at PageID#85). Mr. Quinn asserts in his traverse that this claim is not procedurally defaulted because he fairly presented it to the Ohio Court of Appeals. (ECF Doc. 7, PageID#936-37).

Mr. Quinn's *Brady* claim is procedurally defaulted because he failed to fairly present it to the Ohio Court of Appeals and the Ohio Supreme Court. Mr. Quinn asserts that the appellate court determined he "had set forth an argument challenging the State's failure to provide discovery of the video." (ECF Doc. 7, PageID#936-37) (citing *Quinn*, 2019-Ohio-3980, ¶23) (emphasis removed). Upon this basis, Mr. Quinn contends that he presented this argument in his direct appeal. (*Id.* at PageID#937)

But Mr. Quinn's quotation of the state appellate court's ruling is misleading. Although the state appellate court observed that Mr. Quinn assigned as error the prosecutor's failure to provide the cellphone video in discovery, the appellate court explicitly held that Mr. Quinn failed to raise a *Brady* claim and further declined to make any such argument on his behalf. *Quinn*, 2019-Ohio-3980, ¶23. Specifically, the state appellate court determined that Mr. Quinn – who was represented by counsel on direct appeal – only briefly mentioned the State's failure to provide discovery in the statement of facts portion of his merit brief, and this cursory reference did not satisfy his duty to present an argument with respect to each assignment of error under App. R. 16(A)(7).[3] *Id.*; (*see also* ECF Doc. 6-1, PageID#140). Thus, the court "decline[d] to assume Mr. Quinn's duty on appeal and create an argument on his behalf as to discovery of the video." *Quinn*, 2019-Ohio-3980, ¶ 23. Nevertheless, the Ohio Court of Appeals rejected any argument that Mr. Quinn could hypothetically have raised, stating:

> **[E]ven if Mr. Quinn had set forth an argument challenging the State's failure to provide discovery of the video**, defense counsel essentially admitted to receiving a copy of the video in advance, previously viewing it, and specifically recalling its contents, and we would likewise determine that Mr. Quin has not suffered any prejudice.

*Id.* (emphasis added).

A review of Mr. Quinn's direct appeal brief supports the state appellate court's conclusion that Mr. Quinn failed to present this *Brady* claim. In his assignment of error, Mr. Quinn asserted a factually and legally different argument. While Mr. Quinn here alleges he raised a *Brady* violation on direct appeal, his specific arguments notably did not place *any* blame on the State's actions for

---

[3] Under App. R. 16(A)(7), the appellant is required to include in his brief:

> [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.

the allegedly incomplete video display. (ECF Doc. 6-1, PageID#143-48). Rather, while pointing to portions of the video that would have supported his defense, Mr. Quinn's argument merely blames the alleged "technological limitations" of the equipment used to present this evidence. (*See* ECF Doc. 6-1, PageID#145-46). Further, Mr. Quinn's argument on direct appeal regarding the cell phone video was that it was unfairly prejudicial and irrelevant, *not* that the State withheld it. (*Id.* at PageID#143-48). Mr. Quinn's direct appeal brief did not comply with App. R. 16(A)(7)'s requirements because it did not adequately support or argue his claim beyond a cursory mention in his statement of facts. Mr. Quinn's direct appeal brief also lacks reference to any federal or Supreme Court case law to support an argument that the State violated *Brady* by withholding evidence. (*Id.* at PageID#143-52). Finally, the record evidence supports the Ohio Court of Appeals' passing discussion of Mr. Quinn's unraised *Brady* argument. Although Mr. Quinn claims his defense counsel lacked knowledge regarding the video, that argument is belied by the trial transcript. For example, the trial transcript reveals that Mr. Quinn's defense counsel questioned Mr. Quinn's wife her review of the video during the preparation of Mr. Quinn's defense prior to trial. (ECF Doc. 6-2, PageID#680-81).

Assuming *arguendo* that Mr. Quinn did fairly present this claim to the Ohio Court of Appeals, Mr. Quinn's claim is still procedurally defaulted because he failed to raise this *Brady* claim to the Ohio Supreme Court. Indeed, Mr. Quinn's argument to the Ohio Supreme Court (while represented by counsel) was that the trial court improperly admitted cell phone video missing allegedly exculpatory portions, which was unfairly prejudicial pursuant to Ohio Evid. R. 403(a). (*See generally* ECF Doc. 6-1, PageID#274-76). Mr. Quinn again failed to reference any federal or Supreme Court law to support a federal constitutional *Brady* claim (*See id.*). For a claim to be fairly presented, it must be presented to *all* levels of the state courts. And making a cursory

reference in a brief – *i.e.,* that the playing of an incomplete cell video "without ever providing or showing that video to Mr. Quinn's counsel" violated Evid. R. 403(A) because it created a "substantial danger" of confusing the jury about Mr. Quinn's charges – does not satisfy this fair presentation requirement. (*See id.* at PageID#275-76); *Lott v. Coyle*, 261 F.3d 594, 607 (6th Cir. 2002) (finding that the "relatedness" of the issues between a claim presented to the state courts and one not presented to the state courts will not save the unpresented claim); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) ("To fairly present a claim to a state court, a petitioner … must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.") (citation omitted and quotation marks omitted).

Where, as here, a petitioner fails to present a claim to the Ohio Supreme Court, even if he had fairly presented this issue to the Ohio Court of Appeals, the claim is procedurally defaulted. *See Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009) ("For a claim to be reviewable at the federal level, each claim must be fairly presented at every stage of the state appellate process."). Mr. Quinn fails to demonstrate either cause or prejudice to excuse this procedural default. (ECF Doc. 7, PageID#936-37); *Matthews*, 486 F.3d at 891 (6th Cir. 2007) (finding that the court does not need to engage in actual prejudice analysis where the habeas petitioner fails to establish cause). Nor does Mr. Quinn establish actual innocence. (ECF Doc. 7, PageID#936-37); *Schlup*, 513 U.S. at 324. Accordingly, I recommend that the Court deny or dismiss Ground Four because it is procedurally defaulted.

## VII.    RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. *Legal Standard*

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of

appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)).  The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

**B.  *Analysis***

38

Mr. Quinn cannot show that the Court's ruling is debatable among jurists of reason because his claims are procedurally defaulted, noncognizable, and/or meritless. Because jurists of reason would not find this conclusion to be debatable, I RECOMMEND that the Court not issue a Certificate of Appealability in this case.

## VIII.   OVERALL RECOMMENDATION

Because Mr. Quinn has presented either procedurally defaulted, noncognizable, and/or meritless claims, I RECOMMEND that the Court DISMISS and/or DENY his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 and not grant him a certificate of Appealability.

Dated: May 24, 2023

*/s Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

## IX.     NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).